Good morning, Judges Silverman, Reimer, and Hall. There are two issues about which I would like to speak on this matter. One is how fair is fair, and two is Chevron. Just what is fundamental fairness, which is the standard in this case? We learned about fairness on the playground when the bully asserted that our mother wears Army boots, and we were able to confront and say, no, that's not true. Here comes my mother now. Those are not Army boots. Mr. Spence, may I ask you just a practical question? Sure. Assume that cross-examination should have been allowed. All right. Okay. What is it that you then expected or now expect would be adduced through cross-examination to forensic experts? We would have been able to challenge the basis of the – My question is much more specific. That is, what exactly would you expect to have adduced that would be helpful to your client, then or now? Sure. The judge relied upon double hearsay in the report that certain things were true in China. They were speculative when they were used in the previous case. For example, they had attached to the report another report from another case. It was unsigned. Yes, but that's obvious. I mean, I assume you could have brought that court and did bring that out at the hearing. I mean, you didn't need cross-examination to show that, did you? It may be, but we didn't even have opportunity to discuss it. At the hearing, she went straight from the – straight from the direct testimony – the end of testimony into the allowing documents into the record without allowing any more discussion on it. And then, in fact, she had sandbagged the attorney by saying previously that she was going to allow cross-examination, and then all of a sudden said, even though I said before cross-examination, now no. For this purpose, I'm not quarreling at all with the notion that cross-examination should have been allowed. For this purpose, I'm simply trying to get from you exactly what information that would be helpful to your client. If we remanded today and you get to cross-examine the forensic expert, what do you expect to get out of him that's going to make any difference to the outcome of this case? I would have expected the forensic expert to admit that her conclusory statements were based on speculation. Well, it's doubtful she's going to – or he or she is going to admit that she was speculating. I mean, what concrete information that's admissible are you going to get? She asserted that, for example, that in China, arrest records, documents were not given to the citizens, that they were retained, and she asserted this as a blanket situation for all of China. And I wanted her to admit – when I say I, I wasn't the attorney at the time – the attorney had the right to get her to admit that this was – this is not necessarily true. And that would be based on what? Showing her some Chinese regulations or? Well, at the very least, asking her where and who she got this information from that it was hearsay and to have it stricken. Well, the expert can rely on hearsay, so that's not a problem. I'm sorry, the next person. An expert can rely on hearsay informing an expert opinion. At least we would have been able to highlight that. Okay. All right. Well, the report says – her conclusion is that there are indications that Exhibits 1, 2, and 3 are fabricated. That doesn't sound like an absolute declaration that the document is – that these documents are fabricated. So I presume one of the things you would hope to do is develop the equivocal nature of her opinion and test how strongly or how weakly she sees it? Certainly. Certainly. Both during cross-examination and during closing arguments, if it would have been allowed. But she says also that certain serial numbers are not expected to have appeared the way they do. I guess I don't read that to mean that she's positive that they are phony. And we had the right to inquire just to what degree she was certain, what degree of certainty was applied to her conclusive restatements. Well, now Judge Silverman's questions have just led me to question whether you even needed cross-examination to impugn the worth of the expert's statement. Because if she didn't actually say this, if she only said, well, I think it would be, then why couldn't an objection have sufficed at the time? Because the judge did not entertain it and the judge showed her – Didn't entertain what? Excuse me? Didn't entertain what? Did not entertain the objection and went – just went beyond right into allowing it into – It had been objected previously in an earlier master hearing, but the judge surprised and said all the documents are in the record, even though I said I was going to allow cross-examination. I'm not going to allow it at this time. She had showed if it's not an issue of due process ability to confront, and this document is so invalid on the face, then she showed a problem in her credibility determination by using that document. And that goes then to the second issue I have, which is Chevron. I promised myself if I ever got in front of the Ninth Circuit again, I'd have to read me so many briefs, including this one, where the government insists that Chevron deference is to be allowed for BIA and immigration judges. They overstate their case. It does not give them deference for everything they do. It is only for procedures, for rules. It does not include every credibility determination that they make. I don't think there's any question about that. Thank you. In that case, I'll reserve the rest of my time. Unless you have other questions, I'll reserve the rest of my time for rebuttal. Okay. Thank you very much. Ms. O'Donnell. Good morning, Your Honor. Margaret O'Donnell, sir, the Attorney General. Ms. O'Donnell. What possible basis is there for upholding the denial of the right to cross-examine the forensic expert? Well, Your Honor, I want to point out something in the record, and that is when she – the expert was available telephonically. Yes. At the time the immigration judge released her, there was no objection. Oh, yes, there was. No, Your Honor, there wasn't an objection to the release. You say renewed. There was renewed and earlier objection to the document. Well, sure. But how much more do you have to do? Well, I mean, the Petitioner made it very plain that she wanted to – she objected to the document and she wanted to cross-examine. And right at that point, with respect to the government document submitted, as the validity, I would again make the same argument. The I.J. stopped him, saying she knew the objection and was so holy. So I don't think it's fair to say that the objection wasn't made or presented. All right. Then moving on and addressing your exact question, Petitioner himself was granted a six-month continuance to address the findings of the expert and never followed through on that, presented nothing, and, in fact, testified that he did not pay the fee to the U.S. Embassy for authentication of the documents. He did raise the issue that he did not have the originals for them to examine. However, he knew that it's policy of the government not to return counterfeit documents to Petitioners once they're found to be counterfeit. And so perhaps he couldn't have gotten them authenticated through the Embassy. But there were steps that Petitioner could have taken to at least present some response to that. He could have presented declarations from whoever sent the documents to him, or he could have presented his own declaration as to how he received the documents. He could have presented something in the record that addressed the document. See, here's the problem, as I see it. I mean, in this case, the central credibility determination was based upon the fraudulent documents, which I think would be perfectly proper if those documents are, in fact, fraudulent. But it was critical to the I.J.'s assessment of Azu's credibility. And in that case, it just seems almost self-evident that he has the right at least to cross-examine the person who said they were fraudulent. But this goes back to your original questions to counsel for Petitioner. What prejudice is there? What prejudice is there in any denial of cross-examination? I mean, you know, he doesn't have to prove that the woman is going to confess herself to be a liar. You know, he's got the right to attack it and poke holes in it and try to convince the judge that it's not worthy of belief. He does, but in order to sustain a due process argument in his opening brief to this Court, he has to allege some form of prejudice. His prejudice is he can't test it. He can't test her opinion. That's the prejudice. I understand that, Your Honor. However, that argument is not made in his opening brief. What do you think he's saying when he says, I can't cross-examine the key witness? That's the import of it, isn't it? That's the import of it. So, I mean, what more does he have to say? Well, it goes back to what is it that he thinks he's going to derive from it. How is the cross-examination going? He has to do he has to indicate somehow. I mean, it's impossible to predict what her answers are going to be to his questions. But, I mean, his prejudice is he couldn't test her opinion. How could anyone predict exactly how it's going to go? He'd have to be a soothsayer, you know. Except that one moment. Without an articulation of the prejudice that he believes this violation of due process resulted in. I just suggested what the prejudice is, and that is that the central reason that the I.J. found that he wasn't credible was the fraudulent documents. Boy, what a terrible sentence. I followed it, though. You're right. And I guess what I'm getting stuck on is that there is an obligation on the Petitioner to actually articulate the prejudice, not just let it be assumed by the readers of the brief. He has to say, you know, we may have had this. He doesn't have to prove it. He's not required to prove that he would establish this prejudice. But he has to articulate something. And he doesn't do that. You and I can read this brief and easily interpret it as that he wished to set forward what was her methodology. Because he says these things. What was her methodology that she used? What was this? What was that? What did the jargon mean? But he doesn't say how this is going to ultimately reveal a prejudice against his case, especially in light of the fact that he has submitted no evidence at all that addresses these documents, despite this long period of time that he had given to him by the immigration judge when he claimed surprise at the initial results. Okay. Anything further, Your Honor? I don't think so. Thank you. Okay. Thank you. Two quick points, Your Honors. There is a futility in the embassy procedure, the 287.6, procedures that the government likes to pretend is our duty to do. And he stated that. He said, I called, I tried to make several contacts with the embassy in China, but we had problems with the family afraid to do what the embassy required them to do, and that is to take the documents to the Chinese government. That puts the family in peril and also puts the refugee in peril if he's ever forced to go back. So there's a great futility of the embassy procedures. Now, as far as prejudice, the prejudice is that IJ stated that she relied heavily on that, on the report. She even showed bias in saying that these things, the reports are pretty, have shown to be pretty accurate in the past, and when she referred to it at least two or three times in the process of her oral opinion, that shows the prejudice because we were not able to attack that document, even though we tried to authenticate her with other methods. Mr. Zhu was prejudiced. Okay. Thank you, Mr. Smith. The matter just argued will be submitted, and will next hear argument in Rikki R. versus the city of Oklahoma. Thank you.
judges: Hall, Rymer, Silverman